𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

| | |
|---|---|
| WILLIAM E. JENNINGS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 9:05-0855-HFF-BCK |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| JO ANNE B. BARNHART, | ) **OF THE MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I. INTRODUCTION

This case is before the court pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C.,

concerning the disposition of Social Security cases in this District, and Title 28, United States

Code, Section 636(b)(1)(B).

The plaintiff, William E. Jennings (the "Plaintiff"), brought this action pursuant to

Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

(the "Commissioner") which partially denied his claims for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401-433, 1381-1383(c), respectively.[1]

---

[1] The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program ("SSI"), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (DIB); 20 C.F.R. pt. 416 (SSI), governing these

## II.  BACKGROUND TO CLAIM

Plaintiff was born on November 9, 1960 and has a high school education.  He has past work experience as a brick mason, a grinder operator at a steel mill, and as a laborer.

## III.  ADMINISTRATIVE PROCEEDINGS

The Plaintiff protectively filed applications for DIB and SSI benefits on November 21, 2001, alleging disability as of August 31, 2001 (Tr. 53, 285), due to multiple medical problems, including fainting spells, episodes of pancreatitis, diabetes with elevated blood sugar readings, breathing problems cause by chronic obstructive pulmonary disease ("COPD"), and sleep apnea. Plaintiff does not take insulin for his diabetes.  He smokes one-half of a pack of cigarettes per day.  (Tr. 18)

Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration.  (Tr. 17)  A request for a hearing was timely filed.

### A.  The July 2003 Hearing

On July 10, 2003, a hearing was held in Greenville, South Carolina before the administrative law judge, Edwin W. Tyler (the "ALJ").  (Tr. 302-329)  Plaintiff was represented by his attorney, Robert S. French.  Plaintiff testified that he completed high school and had not taken any additional vocational or special training.  (Tr. 306-07)  He stated that he had a driver's license but did not drive.  (Tr. 308-09)  Plaintiff stated that he quit drinking alcohol during November 2002 and that he smoked a half a pack of cigarettes per day.  (Tr. 313, 315)  He

---

two programs are, in all aspects relevant here, substantively identical.  See Bowen v. City of New York, 476 U.S. 467, 469-470 (1986).

testified that he had never been admitted to the hospital for breathing problems and that he did

not continue to have pancreatitis. (Tr. 319-20) He also testified that he had problems sitting,

standing, and walking. (Tr. 323)

At the end of the hearing, the ALJ indicated he would keep the record open for the

purposes of obtaining consultative examinations prior to rendering a decision.

### B. The Psychological Evaluation of Plaintiff

After the hearing, Plaintiff presented to C. David Tollison, Ph.D. ("Dr. Tollison"), a

licensed clinical psychologist, for a psychological evaluation. (Tr. 253-256) Plaintiff told Dr.

Tollison that he had become depressed in the summer of 2001 when he got sick and could not

work. (Tr. 254) Plaintiff had not had any prior treatment by mental health professionals, but had

been taking Paxil since 2002.

Dr. Tollison opined that Plaintiff did not exhibit the concentration, persistence, or pace

typically required in a work setting, that his ability to complete tasks within timely limits was

unlikely, and it was unlikely that Plaintiff could consistently meet typical employment standards

of regular work attendance, punctuality, and productivity. (Tr. 256) Dr. Tollison diagnosed a

dysthymic disorder and a somatoform disorder and assessed Plaintiff's current global assessment

of functioning as 55 (indicative of moderate symptoms).

### C. The November 2003 Hearing

A supplemental hearing was held on November 21, 2003, in Greenville. Plaintiff again

was represented by his attorney, Mr. French. (Tr. 330-364) ALJ Tyler accepted additional

exhibits (including Dr. Tollison's diagnostic evaluation) and heard testimony from the Plaintiff,



as well as from Plaintiff's wife, Beverly Jennings. (Tr. 302-364) Plaintiff testified that he attended regular classes in school and that he could read a little. (Tr. 348-349)

Karl Weldon, a vocational expert ("VE"), testified that Plaintiff had no transferable skills. (Tr. 354) In response to a hypothetical question proffered by the ALJ, Mr. Weldon testified that Plaintiff could perform sedentary[2] work such as a packer or checker. (Tr. 355) In response to another hypothetical question proffered by the ALJ that contained those restrictions found by Dr. Tollison, Mr. Weldon testified that there were no jobs at any exertional level that Plaintiff could perform. (Tr. 358)

The ALJ considered the case *de novo*, and on January 23, 2004 issued a partially favorable decision which found that the Plaintiff was "disabled" as of July 21, 2003, the date that Dr. Tollison performed a diagnostic evaluation of Plaintiff and determined that Plaintiff was suffering from "a significant intensity of depression" which was chronic and could be expected to continue over the next twelve (12) or more months. (Tr. 24, 27; *see also* 256)

On February 16, 2005, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's finding the final decision of the Commissioner of Social Security. See 20 C.F.R. §§ 404.981, 416.1481. The Plaintiff has exhausted his administrative remedies. The parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).

---

[2]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

## IV. THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff is not entitled to benefits, the

Commissioner has adopted the following findings of the ALJ:

1.  On November 21, 2001, the claimant protectively filed Title II and Title XVI applications, alleging a disability onset date of August 31, 2001.

2.  The claimant met the earnings requirements of the Act as of his alleged disability onset date, and he has continued to do so at least through the date of this decision.

3.  For the purposes of this decision, it is presumed that the claimant meets all of the nondisability requirements of Title XVI.

4.  The claimant is in the "younger person" age category and has a high school education.

5.  The claimant's past vocational experience includes jobs as a brick mason, a grinder operator, and a laborer. His job as a brick mason was low semi-skilled, heavy work, and his job as a grinder operator was low semi-skilled, medium to heavy work. As a laborer, he performed unskilled, heavy to very heavy work.

6.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

7.  Since his alleged disability onset date, the claimant has suffered from the following medically determinable, "severe" impairments: Type I diabetes mellitus, pancreatitis, syncopal episodes, and respiratory problems. Since July 21, 2003, he has also suffered from medically determinable, "severe" depression. He has no other "severe" impairments.

8.  At all pertinent times, the claimant has had no mental or physical impairment, or combination of impairments, which meets or is medically equivalent to any of the impairments listed in Appendix 1 to Subpart P of Social Security Regulations No. 4. Although he has suffered from "severe" depression since July 21, 2003, this impairment is not of the level of severity required to satisfy the C criteria of Listing 12.04. Since July 21, 2003, his depression has caused moderate limitations in activities of daily living, limitations in social functioning, and in concentration, persistence, or pace. He has not experienced any extended episodes of decompensation.

9.  At all pertinent times, the claimant's impairments have precluded him from performing his past relevant work.

10. The claimant's testimony was not fully credible with respect to the period prior to July 21, 2003.

11. Prior to July 21, 2003, the claimant was able to perform only sedentary work that did not require more than two hours of sustained sitting, standing, or walking, more than occasional climbing, or exposure to dust, odors, unprotected heights, mechanical hazards, or temperature changes.



12.    Credible vocational expert testimony establishes that there were a significant number of jobs existing in significant numbers that the claimant could have performed during the period prior to July 21, 2003.

13.    Given the claimant's age, education, past vocational experience, and residual functional capacity, the framework of Medical-Vocational Rule 201.28, in conjunction with the vocational expert's testimony, directs a conclusion that the claimant was not "disabled" within the meaning of the Social Security Act prior to July 21, 2003.

14.    Since July 21, 2003, the claimant has suffered from depression that has further limited him to only sedentary work that provides for extensive, unscheduled rest breaks, and that does not require maintaining concentration, maintaining a normal work pace, or completing tasks. These restrictions on the claimant's mental functional capacity are in addition to the above-described restrictions imposed by his physical impairments.

15.    With the additional restrictions imposed by his depression, the claimant has been unable to perform even unskilled, sedentary work on a sustained basis since July 21, 2003.

16.    Because the claimant is unable to perform his past relevant work or even unskilled, sedentary work on a sustained basis, he has been "disabled" since July 21, 2003. This conclusion is based on the framework of Section 201.00(h) of the Medical-Vocational Guidelines, 20 CFR Part 404, Appendix 2 to Subpart P. 20 CFR §§ 404.1520(f) and 416.920(f).

## V. APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those

persons insured for benefits, who are not of retirement age, who properly apply, and who are

"under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:



the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security

Act has by regulation reduced the statutory definition of "disability" to a series of five sequential

questions that are to be asked during the course of a disability determination. 20 C.F.R. §§

404.1520, 1520a (2004); <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983); <u>Hall v. Harris</u>, 658 F.2d 260

(4th Cir. 1981). The five questions are:

(1) whether the claimant is engaged in substantial gainful activity as defined in Sections

404.1510, 404.1571 et seq., 416.971 *et seq.* If such determination is affirmative, no

disability will be found. 20 C.F.R. §§ 404.1520, 416.920;

(2) whether the claimant's impairments meet the durational requirement (Sections

404.1509 and 416.909), and are severe (Sections 404.1520(c), 416.920(c)). If they do not

meet those requirements, no disability will be found. 20 C.F.R. §§ 404.1509, 416.909,

404.1520(c), 416.920(c);

(3) whether the claimant has an impairment which meets or medically equals a condition

contained within the Social Security Administration's official listing of impairments (at 20

C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. §§

404.1520(d), 416.920(d). If one of the listings is met, disability will be found without

consideration of age, education or work experience. 20 C.F.R. §§ 404.1520(d),

416.920(d);

(4) whether the claimant has an impairment which prevents past relevant work. 20 C.F.R.

§§ 404.1520(e), 416.920(e);



(5) whether, in light of vocational factors such as age, education, work experience and

RFC, the claimant is capable of other work in the national economy. The claimant is

entitled to disability only if the answer is "no." 20 C.F.R.§§ 404.1520(f), 416.920(f).

An individual may be determined not disabled at any step if found to be: gainfully

employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt.

Page 7 of 17

404, Subpart P, App. 1), or capable of returning to former work. In such case, further inquiry is

unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant

work is not possible, the burden shifts to the Commissioner to come forward with evidence that

the claimant can perform alternative work and that such work exists in the national economy.

Hall, 658 F.2d 260; English v. Shalala, 10 F.3d 1080 (4th Cir. 1993); Harper v. Bowen, 854 F.2d

678 (4th Cir. 1988); Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). The Commissioner may

meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a

vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the

claimant's capacity and the job's existence. Grant v. Schweiker, 699 F.2d 189, 191 (4th

Cir.1983).

　　　With respect to the general procedure for determining SSI disability benefits, the standard

consists of a two-fold test: The claimant must show a medically determinable physical or mental

impairment, and the impairment must be such as to render the claimant unable to engage in

substantial gainful employment. Walker v. Harris, 642 F.2d 712 (4th Cir. 1981), *citing* Blalock v.

Richardson, 438 F.2d 773 (4th Cir. 1972); 42 U.S.C. § 423(d); 20 C.F.R. § 404.1501(b).



### VI. SCOPE OF REVIEW

　　　Under the Social Security Act, 42 U.S.C. § 405(g) and § 1383(6)(3), this court's scope of

review of the Commissioner's final decision is limited to: (1) whether the decision of the

Commissioner is supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390,

401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v.

Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the court disagrees with it, so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456; see also Smith v. Chater, 99 F.3d at 638 (the duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court), citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993). Therefore, if substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. Blalock, 483 F.2d at 775.

Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the Commissioner's decision complies with applicable law. Myers v. Califano, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the

whole record to assure that there is a sound foundation for the [Agency's] findings, and that [the]

conclusion is rational. Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations

omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an

improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.

1987). "Where the [Commissioner's] determination is in clear disregard of the overwhelming

weight of the evidence, Congress has empowered the courts to modify or reverse the

[Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to

Section 405(g). Vitek, 438 F.2d at 1158 (citations omitted); see also Melkonyan v. Sullivan, 501

U.S. 89, 98 (1991).

## VII.  THE ALJ'S ANALYSIS

Consistent with the five step "sequential evaluation" for the adjudication of disability

claims, the ALJ first found the Plaintiff had not engaged in substantial gainful activity since his

alleged onset of disability date.  (Tr 26, Finding 6)  At Step Two, the ALJ found that Plaintiff

established that he had suffered from the following medically determinable"severe" impairments:

Type I diabetes mellitus, pancreatitis, synocopal episodes, and respiratory problems.  Since July 21,

2003, he has also suffered from medically determinable, "severe" depression.  (Tr. 26, Finding 7)

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the

criteria of any impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1, the so-called "Listing of

Impairments."  The ALJ also found that Plaintiff's allegations regarding his limitations were not

fully credible with respect to the period prior to July 21, 2003.  (Tr. 26, Findings 8, 10)  The ALJ

next determined that prior to July 21, 2003, Plaintiff retained the residual functional capacity

("RFC") to perform a range of work up to the performance of sedentary work that did not require

more than two hours of sustained sitting, standing, or walking,  (Tr. 26, Finding 11)  At Step Four,

the ALJ found that at all times the Plaintiff's RFC precluded him from performing his past relevant

work.  (Tr. 26, Finding 9)  Finally, at Step Five, the ALJ found that, based upon the framework of

the Medical-Vocational Guidelines (the "Grids"), Plaintiff was not disabled prior to July 21, 2003

(Tr. 26, Finding 13) but that since July 21, 2003, Plaintiff suffered from depression that further

limited him and that Plaintiff was disabled as defined in the Social Security Act as of July 21,

2003.  (Tr. 27, Findings 15 and 16)

### VIII.  PLAINTIFF'S OBJECTION

Plaintiff raises one objection in his Brief, which is listed below:

Whether substantial evidence supports the Commissioner's decision that Plaintiff was not
disabled within the meaning of the Social Security Act prior to July 21, 2003.

### IX.  DISCUSSION

#### A.  The ALJ's Determination of Plaintiff's Onset Date

Plaintiff alleges that his onset date of disability was August 31, 2001, and seeks benefits

from that date forward.  The Commissioner contends that Plaintiff's date of disability was July 21,

2003, the date that Plaintiff presented to Dr. Tollison for a psychological evaluation, which

resulted in Dr. Tollison finding that Plaintiff had a medically determinable, "severe" depression.[3]

(Tr. 253-256)

The record indicated that, prior to July 21, 2003, Plaintiff suffered from severe physical

impairments.  However, the ALJ determined that Plaintiff failed to present evidence which would

show that his impairments prior to July 21, 2003, were so functionally limiting as to preclude him

---

[3]     The parties agree that Plaintiff was disabled as of July 21, 2003, but Plaintiff alleges that his disability actually
began approximately two years earlier, on August 31, 2001.  (Tr. 54, 286)

from performing any substantial gainful activity for at least twelve consecutive months. *See*

Blalock, 83 F.3d at 775 (Plaintiff has the burden of proving disability, and bears the burden of non-

persuasion). Instead, the evidence of record indicated that, although Plaintiff's physical

impairments caused some discomfort, they were not disabling. *See, e.g.*, Craig v. Apfel, 212 F.3d

433, 436 (8th Cir. 2000) (simply because working might cause some discomfort does not mandate

a finding of disability).

During the fall of 2001, Plaintiff was diagnosed with syncope, diabetes, and COPD. (Tr.

144, 148) Despite his physician's recommendations that Plaintiff discontinue the use of alcohol

and tobacco, Plaintiff continued to use alcohol until November 2002 and continued to smoke. (Tr.

313, 315). *See* Preston v. Heckler, 769 F.2d 988, 990 n.1 (4th Cir. 1985) (noncompliance with

effective measures provides an alternative basis for denying benefits); 20 C.F.R. § 404.1530

(failure to follow prescribed treatment provides a basis for denying benefits).

Numerous diagnostic tests for Plaintiff's physical impairments during 2001 and 2002 were

normal. (Tr. 114, 125, 131, 167) For example, a treatment note dated February 4, 2002, indicated

Plaintiff's hypertension was under good control, and his blood sugar was doing well. (Tr. 164)

Pulmonary function testing during January, February, and May 2002, revealed that Plaintiff's

FEV1 remained in the high 70th percentile of his predicted value (Tr. 186-89), and Plaintiff



reported to Dr. Early in August 2003 that CPAP therapy helped and that he was not using any

bronchodilators.[4] (Tr. 259) *See* Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996) (objective

medical evidence supported a conclusion that claimant was not disabled); Mickles v. Shalala, 29

F.3d 918, 921 (4th Cir. 1994) (objective medical evidence did not reflect disabling condition);

---

[4]    Dr. Early also performed a consultative examination after Plaintiff's first hearing.

Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (a condition is not disabling if it can be reasonably controlled by medication or treatment); Cruze v. Chater, 85 F.3d 1320, 1326 (8th Cir. 1996) (a claimant's statement is substantial evidence to support the Commissioner's decision).

The Commissioner acknowledges that on May 16, 2003, Dr. Keith opined that Plaintiff could not do any significant amount of manual work; however, prior to July 21, 2003, no physician or mental health provider ever opined that Plaintiff was disabled. *See* Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991) (finding that no physician opined that Plaintiff was disabled supported a finding of no disability). Indeed, Plaintiff had never seen any mental health provider prior to July 21, 2003. (Tr. 254) Furthermore, despite severe physical impairments, no physician placed any significant limitations on Plaintiff's activities. *See* Melton v. Apfel, 181 F.3d 939, 941 (8th Cir. 1999) (lack of medically necessary restrictions support the ALJ's findings that Plaintiff was not disabled).

Moreover, Drs. Keith, El-Ibiary, and Early all found that Plaintiff was capable of meeting the minimal lifting and carrying requirements of sedentary work (Tr. 194, 249, 265-66), and Drs. El-Ibiary and Early found that Plaintiff could meet the sitting requirements for sedentary work. (Tr. 194, 266) These findings allowed the ALJ to reasonably infer that Plaintiff's physical impairments were not disabling. *See* Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) (inferences can be properly drawn from record evidence).

In his decision, the ALJ noted that Dr. Tollison's diagnosis of Plaintiff's mental condition (depression) further limited Plaintiff's ability to work on a sustained basis and caused the ALJ to conclude that Plaintiff was disabled. (Tr. 26-27) Significantly, however, Plaintiff did not allege a disabling mental condition in his application for benefits, nor did he indicate that he stopped work

due to a mental condition. (Tr. 66) Indeed, as mentioned above, it was not until July 21, 2003 that

Plaintiff actually was seen by a mental health provider and diagnosed with a mental condition. (Tr.

253-256)

Social Security Ruling ("SSR") 83-20 states that medical evidence is the primary element

in the determination of onset of disability.[5] SSR 83-20 provides that for non-traumatic disabilities,

such as depression:

> [T]he determination of onset involves consideration of the applicant's allegations, work history, if
> any, and the medical and other evidence concerning impairment severity. The weight to be given
> any of the relevant evidence depends on the individual case. . . . .The starting point in determining
> the date of onset of disability is the individual's statement as to when disability began. . . . The day
> the impairment caused the individual to stop work is frequently of great significance in selecting the
> proper onset date. . . . With slowly progressive impairments, it is sometimes impossible to obtain
> medical evidence establishing the precise date an impairment became disabling[.]

The Ruling establishes a presumption in favor of the claimant: "In determining the date of

onset of disability, the date alleged by the individual should be used if it is consistent with all the

evidence available." In the present case, however, there is no evidence, apart from Plaintiff's

statement to Dr. Tollison, that Plaintiff suffered depression prior to July 21, 2003. As the ALJ

stated in his decision, Plaintiff never mentioned depression or any other mental health problem as a

disabling impairment when he completed his "Disability Report-Adult" form or his

"Reconsideration Disability Report," or in statements provided when he requested a hearing.[6] (Tr.

20, *referring to* Tr. 65-74; 89-92; 93-95) No evidence exists in Plaintiff's medical records to

---

[5]     A Social Security Ruling is binding on all parts of the Social Security Administration. <u>See</u> <u>Heckler v. Edwards</u>,
465 U.S. 870, 873 n. 3 (1984).

[6]     As the ALJ noted in his decision, Plaintiff filled out a Statement of Medications dated June 19, 2003 which listed
that he was taking Paxil for depression, which had been prescribed by Plaintiff's pulmonary specialist, Dr. Clark.
(Tr. 20; *see also* Tr. 95) However, Dr. Clark's treatment notes do not reflect that he ever prescribed Paxil to
Plaintiff, or ever diagnosed Plaintiff as suffering from depression or other emotional problems. Finally, there
is no medical evidence to indicate that Dr. Clark treated the Plaintiff for any medical problem after May 2002.
(Tr. 20; *see also* Tr. 181-192)

support an onset date prior to July 21, 2003. Instead, the only extant medical evidence indicates

that Plaintiff was first diagnosed with a mental condition on July 21, 2003, which coincides with

the ALJ's finding of Plaintiff's onset of disability date. Although Plaintiff argued that the ALJ

should have found an earlier onset of disability date, he failed to present any evidence which would

contradict the ALJ's determination. *See* Blalock, 483 F.2d at 775 (Plaintiff has the burden of

proving disability, and bears the burden of non-persuasion); 20 C.F.R. § 404.1545(a)(3) (claimants

are responsible for providing the evidence needed to make a finding about their residual functional

capacity).

In sum, substantial evidence, or such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion, supports the ALJ's conclusion that Plaintiff was not disabled

prior to July 21, 2003. *See* Hays, 907 F.2d at 1456.

### B. The ALJ's Determination of Plaintiff's Credibility

As discussed above, there was a lack of supporting objective medical evidence

substantiating Plaintiff's allegations of disability prior to July 21, 2003. *See* Curran-Kicksey v.

Barnhart, 315 F.3d 964, 968 (8th Cir. 2003) (lack of supporting objective medical evidence may be

used as a factor in evaluating credibility of a claimant's allegations); Wheeler v. Apfel, 224 F.3d

891, 895 (8th Cir. 2000) (lack of corroborating medical evidence undermined the claimant's

testimony).



In addition to the lack of supporting objective medical evidence, other reasons also allowed

the ALJ to determine that Plaintiff was not totally credible. First, Plaintiff's impairments had been

treated in a fairly conservative manner and had not required consistent treatment. *See* Mickles, 29

F.3d at 930 (the ALJ did not err by considering the inconsistency between claimant's level of

treatment and claims of disabling pain); <u>Hunter</u>, 993 F.2d at 36 (lack of significant treatment constitutes specific evidence which supports an acceptable credibility determination that a claimant's symptoms are not disabling). Second, treatment notes regarding Plaintiff do not reflect any significant restrictions on Plaintiff's activities. *See* <u>Tennant v. Apfel</u>, 224 F.3d 869, 871 (8th Cir. 2000) (the ALJ's credibility determination is supported by the absence of physician ordered limitations on claimant's activities). One strong indication of the credibility of a Plaintiff's statements are their consistency with other information in the record. Here, Plaintiff testified to extremely limited daily activities; however, the record as a whole does not support Plaintiff's extreme self-limitation of daily activities.

Third, other inconsistencies further undermined Plaintiff's credibility. Plaintiff testified that he had problems sitting, standing, and walking. (Tr. 323) However, Dr. El-Ibiary determined that Plaintiff could stand and/or walk about six hours and sit about six hours (Tr. 194), Dr. Early determined that Plaintiff's impairments did not affect his ability to sit and that he could stand and/or walk at least two hours (Tr. 265-266), and Dr. Keith determined that Plaintiff could sit at least four hours and stand and/or walk at least two hours. (Tr. 249) In addition, although Plaintiff testified that he could only lift a gallon of milk occasionally (Tr. 323), Drs. Keith, El-Ibiary, and Early all determined that Plaintiff could occasionally lift a weight well in excess of a gallon of milk. (Tr. 194, 249, 265)

Because the ALJ conducted a proper credibility analysis supported by substantial evidence, the court will defer to the ALJ's credibility determination and not substitute its judgment for that of the ALJ. *See* <u>Hays</u>, 907 F.2d at 1456.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision **be affirmed.**

George C. Kosko
United States Magistrate Judge

December 8, 2005
Charleston, South Carolina